MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2021 ME 4
Docket:        Cum-20-149
Argued:        December 8, 2020
Decided:       January 26, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ARTHUR BIBEAU

v.

CONCORD GENERAL MUTUAL INSURANCE COMPANY

HUMPHREY, J.

[¶1]   In this appeal, we consider whether the provisions of a homeowner's insurance policy unambiguously exclude coverage for substantial losses sustained by the policy holder.  Arthur Bibeau appeals from a summary judgment entered by the Superior Court (Cumberland County, *Stewart, J.*) in favor of Concord General Mutual Insurance Company (Concord) on Bibeau's complaint for alleged breaches and violations of the homeowner's insurance policy issued to him by Concord.[1]  Bibeau argues, among other things, that the court erred when it found that the policy unambiguously excluded from

---

[1]  Bibeau's complaint alleged the following causes of action: breach of contract for failure to provide insurance coverage (Count 1); action on insurance policy with account annexed, pursuant to 14 M.R.S. § 51 (2020) (Count 2); violation of Maine's Insurance Code based on unfair claims settlement practices, pursuant to 24-A M.R.S. § 2436-A (2020) (Count 3); and interest on overdue payment by an insurance company, pursuant to 24-A M.R.S. § 2436 (2020) (Count 4).

coverage losses caused by earth movement. We disagree and affirm the judgment.[2]

## I. BACKGROUND

[¶2]  The following facts are drawn from the parties' supported statements of material facts, viewed in the light most favorable to Bibeau. *See MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 6, 214 A.3d 1.

[¶3]  In 2006, Bibeau purchased a home in Portland and insured it through the policy issued to him by Concord. On or about September 15, 2017, Bibeau submitted a notice of claim to Concord for damage to his home that included extensive foundation cracks and settlement and that led to "racking doors and windows, out of level floors and stairs, cracking drywall, separating interior baseboard, and a leaning garage."[3] Bibeau alleged that this damage was caused by a 2006 water line leak,[4] which, according to his expert, pushed sand and other material under the foundation of the home, compromising the

---

[2] Because the court did not err in determining that Bibeau's claim was excluded pursuant to the earth movement exclusion, we do not reach the other arguments asserted by Concord to support the summary judgment except to the extent that they relate to the ambiguity of the policy's provisions.

[3] Bibeau retained an expert to investigate the damage to his home. The expert estimated that Bibeau's losses were over $500,000 and that most of the home would need to be replaced.

[4] The water line leak was identified by Bibeau shortly after moving into the house and was repaired in May 2007. On May 14, 2007, Bibeau submitted a notice of claim to Concord for the damage to the water line only. However, due to exclusions in the policy, the claim was denied by Concord on July 27, 2007.

foundation's integrity, causing it to drop down or "settle." In contrast, Concord's expert concluded that the settling was caused by the house being built on "unprepared or uncontrolled fill," a nonuniform soil composition that allowed the house to settle at different rates. Although the parties disagree about what caused the settling, the parties do not dispute that the damage to Bibeau's house is the result of earth moving under the house's foundation.

[¶4] On May 1, 2018, Concord denied Bibeau's claim based on the policy's earth movement exclusion and its anti-concurrent-causation clause.[5] On October 16, 2018, Bibeau filed a complaint against Concord in the Superior Court alleging a breach of the policy and unfair claims settlement practices, and seeking overdue interest on the amount owed under the policy.[6] Concord answered and denied that it had breached the terms of the policy. On November 1, 2019, Concord moved for a summary judgment on all of the counts in Bibeau's complaint.

---

[5] The anti-concurrent-causation clause provides that "[Concord] do[es] not insure for loss caused directly or indirectly by any of [various enumerated causes, including earth movement]. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*" (Emphasis added.)

[6] Of the counts alleged in Bibeau's complaint, Count 2, "Action on insurance policy with account annexed," pursuant to 14 M.R.S. § 51, was intended to satisfy the pleading rules for actions on insurance policies and is not an independent cause of action.

4

[¶5]   On April 24, 2020, the court entered a summary judgment for Concord, reasoning that because there was no genuine dispute that Bibeau's losses were caused by "subsurface soils being undermined and earth movement," the policy's unambiguous language, specifically its earth movement exclusion, excluded Bibeau's claim from coverage.[7]   Bibeau timely appealed the judgment.  *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2A, 2B(c)(1).

## II.  DISCUSSION

[¶6]   We review a grant of a summary judgment de novo, "considering the evidence in the light most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence to which the statements refer demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Kurtz & Perry, P.A. v. Emerson,* 2010 ME 107, ¶ 15, 8 A.3d 677 (quotation marks omitted).  "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a fact-finder to

---

[7]   The court found that there were genuine disputes of material facts as to Concord's alternative grounds for denying Bibeau's claim, specifically homeowner neglect; faulty design, workmanship, construction and materials; and latent defects.  The court also concluded that Bibeau's claim was not barred by the statute of limitations.

choose between competing versions of the fact." *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773.

[¶7] Bibeau argues that the court erred in concluding that the relevant policy language was not ambiguous and that the damage to his house was excluded based on the policy's earth movement exclusion. Bibeau's argument requires us to examine three sections of the policy: Section I-Property Coverages (Coverages), Section I-Perils Insured Against (Perils), including the "Exception To [paragraph] c.(6)" (Perils Exception), and Section I-Exclusions (Exclusions).

[¶8] Relevant to this appeal, the policy covers the dwelling on the "residence premises," i.e., Bibeau's home, Coverages paragraph A.1.a, and insures "against risk of direct physical loss to [the home]," Perils paragraph A.1. The scope of that coverage is limited in two significant respects. First, the policy *generally* does not cover specific losses enumerated in Perils paragraph A.2.c.(6)(f), including those caused by a settled foundation. However, under certain circumstances, those losses are covered pursuant to the Perils Exception, which provides, "*Unless the loss is otherwise excluded*, we cover loss to [Bibeau's home] resulting from an accidental discharge or overflow of water

6

or steam from within a . . . [s]torm drain, or water, steam or sewer pipe, off the 'residence premises.'" (Emphasis added.)

[¶9] Second, the policy does not insure against losses excluded under Exclusions paragraph A.2., including losses caused by earthquakes, landslides, mudslides, mudflow, subsidence, sinkholes or "[*a*]*ny other earth movement* including earth sinking, rising or shifting; caused by or resulting from human or animal forces or any act of nature." (Emphasis added.) Additionally, Exclusions paragraph A. includes an anti-concurrent-causation clause, which provides that losses caused by any of the enumerated exclusions are not covered "regardless of any other cause or event contributing concurrently or in any sequence to the loss." The anti-concurrent-causation clause "entirely bars insurance coverage where a claimed loss is caused by a combination of covered and excluded perils." *Boazova v. Safety Ins. Co.*, 968 N.E.2d 385, 393 (Mass. 2012) (listing cases).

[¶10] Here, the court concluded that there was no genuine dispute that the damage to Bibeau's home was caused by the movement of earth under the foundation. The record and the parties' statements of material facts support this conclusion—the parties agree that earth movement under the foundation caused the house to "settle," or drop down, which resulted in the damage.

[¶11] However, the parties do not agree about what *caused* the earth movement—a water leak as asserted by Bibeau, or the construction of Bibeau's home on top of uncontrolled fill as asserted by Concord. The trial court concluded that this disagreement is not material to Bibeau's claim under the policy because regardless of the cause of the earth movement, Bibeau's losses are clearly excluded by the policy's earth movement exclusion. Bibeau challenges the court's conclusion, asserting that the earth movement exclusion itself is ambiguous, and that its meaning is made even more ambiguous when combined with the language of the Perils Exception. Thus, we begin by reviewing the relevant policy language to determine whether its meaning is plain or whether it is ambiguous. *See e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Estate of Benson*, 2015 ME 155, ¶¶ 8-16, 128 A.3d 1065.

A. Ambiguity of Earth Movement Exclusion

[¶12] We review the court's interpretation of an insurance policy de novo. *Kelley v. North East Ins. Co.*, 2017 ME 166, ¶ 4, 168 A.3d 779; *see also Hall v. Acadia Ins. Co.*, 2002 ME 110, ¶ 6, 801 A.2d 993 ("The determination of whether an insurance contract is ambiguous is a question of law for the court." (quotation marks omitted)). An insurance contract is ambiguous if it is "reasonably susceptible of different interpretations," *Geyerhahn v. U.S. Fid. &*

*Guar. Co.*, 1999 ME 40, ¶ 12, 724 A.2d 1258 (quotation marks omitted), "from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured," *Kelley*, 2017 ME 166, ¶ 5, 168 A.3d 779 (quotation marks omitted). "If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Id.* (quotation marks omitted).

[¶13] Bibeau contends that the earth movement exclusion is ambiguous because similar exclusions have typically been applied to losses stemming from natural disasters that are impossible to predict or insure against and not to losses stemming from leaks in pipes, and therefore, if Concord wished to exclude the type of loss that Bibeau suffered, it should have specifically "included the accidental discharge of water from a water pipe in its list of what constitutes earth movement."

[¶14] In support, Bibeau points to *Powell v. Liberty Mutual Fire Insurance Co.*, 252 P.3d 668 (Nev. 2011), in which the Nevada Supreme Court considered an earth movement exclusion that read:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or

event contributing concurrently or in any sequence to the loss. . . . **Earth movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide, mine subsidence; mudflow; earth sinking, rising or shifting.

*Id.* at 670. In holding that this earth movement exclusion was ambiguous and did not exclude "damage sustained as a result of soil movement from a burst pipe," the court reasoned that the defendant

should have drafted a more explicit exclusion. Some insurance policies have clarified exactly what is excluded by their earth movement exclusion. These policies specify that earth movement can be due to *either natural or unnatural causes*. Some insurance policies have also specified that earth movement is not limited to a list of examples, and that no matter what causes the earth movement, if the earth moves, the damage is excluded.

*Id.* at 674 (emphasis added) (citations omitted).

[¶15] Despite Bibeau's reliance on *Powell*, we find the Mississippi Supreme Court's analysis in *Mississippi Farm Bureau Casualty Insurance Co. v. Smith*, 264 So. 3d 737 (Miss. 2019), more helpful because there the court considered an earth movement exclusion that was identical to the exclusion in the policy here, *see id.* at 739. In that case, the court concluded that the exclusion was unambiguous because "[t]he language contained in the earth-movement exclusion makes clear that it excludes coverage for damage resulting from earth movement, regardless of the cause of the earth movement,

including human forces." *Id.* at 746. Applying the exclusion, the court concluded that the insured's damages were excluded from coverage because the parties did not dispute that the damages resulted from earth movement— even though the earth movement may have been precipitated by an otherwise covered water leak.[8] *Id.*

[¶16] In reaching that conclusion, the court in *Mississippi Farm Bureau* distinguished the earth movement exclusion at issue from the exclusion considered in *New Hampshire Insurance Co. v. Robertson*, 352 So. 2d 1307 (Miss. 1977). In *Robertson*, the insured's policy excluded losses "caused by, resulting from, contributed to or aggravated by earthquake, volcanic eruption, landslide, *or any other earth movement*." *Id.* at 1309 (emphasis added). The *Robertson* court concluded that because "[t]he provision excluding loss *by any other earth movement* appears in the context of a clause dealing with earthquakes, volcanic eruption, and landslides," it was "limited to 'earth movement' resulting from natural forces (as opposed to earth movement resulting from the water leak)."

---

[8] In its discussion of other earth movement exclusions, the *Mississippi Farm Bureau* court cited two other cases in which courts considered earth movement exclusions that were not limited to natural disasters and thus found to apply to losses caused by *any* type of earth movement (natural or external). *Miss. Farm Bureau Cas. Ins. Co. v. Smith*, 264 So. 3d 737, 743-44 (Miss. 2019). The courts deciding those other cases similarly concluded that such language unambiguously excluded damages caused by earth movement, even if that movement was caused by human error or external forces. *See Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 908-13 (S.D. Miss. 1998); *Boteler v. State Farm Cas. Ins. Co.*, 876 So. 2d 1067, 1068-70 (Miss. Ct. App. 2004).

*Id.* at 1310 (emphasis added). In contrast, the earth movement exclusion included in the policy here and discussed in *Mississippi Farm Bureau* is not limited to natural forces, but applies to any "earth movement including earth sinking, rising or shifting; caused by or resulting from *human or animal forces or any act of nature.*" *Miss. Farm Bureau Cas. Ins. Co.*, 264 So. 3d at 739 (emphasis added).

[¶17] Because the policy's earth movement exclusion clearly applies to *any* earth movement, not just natural disasters, and includes earth movement resulting from human or natural forces, we conclude that, viewed "in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured," the policy's earth movement exclusion is not reasonably susceptible to different interpretations. *Kelley*, 2017 ME 166, ¶ 5, 168 A.3d 779 (quotation marks omitted). The court did not err in concluding that the exclusion was unambiguous.[9]

---

[9] Bibeau also contends that, pursuant to the doctrine of *ejusdem generis*, the exclusion's reference to specific natural disasters constrains the more general language of "any other earth movement" to exclude only those losses caused by natural disasters. We have described the doctrine of *ejusdem generis*: "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *New Orleans Tanker Corp. v. DOT*, 1999 ME 67, ¶ 7, 728 A.2d 673 (quotation marks omitted). However, because the earth movement exclusion is unambiguous, there is no need to apply the doctrine of *ejusdem generis*. *See State v. Ferris*, 284 A.2d 288, 290 (Me. 1971) ("In construing the *ambiguous* use of the general language of the statute we turn to the familiar rule of *ejusdem generis*." (Emphasis added.)).

12

B.    Ambiguity as to Covered Perils

[¶18]  Bibeau also urges us to conclude that the policy is ambiguous as to what perils are and are not covered because its provisions are complicated and confusing, particularly the interaction of the policy's Coverages section; its Perils section, including the Perils Exception; and its Exclusions section.  He argues that the document cannot be understood by an average person because, at the heart of it, the policy provides coverage for Bibeau's losses vis-a-vis the Perils Exception, *see supra* ¶ 8, but then eliminates that coverage by the earth movement exclusion found several pages later in the Exclusions section, *see supra* ¶ 9.

[¶19]  Although these provisions are found in different sections of the policy and require some careful reading and analysis, they proceed logically from one section to another and contain language that is not reasonably susceptible to different interpretations.  *See Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 386 (Me. 1989) (noting that courts should not confuse complexity for ambiguity).  Bibeau's argument regarding the Perils Exception ignores its simple introductory phrase, which unambiguously provides that specific losses are covered pursuant to the Perils Exception "[*u*]*nless the loss is otherwise excluded*."  (Emphasis added.)  Thus, to avail himself of the Perils Exception,

Bibeau must first determine that his losses are not otherwise excluded by the policy. This inquiry necessarily leads to the Exclusions section, which, as noted above, clearly and unambiguously excludes losses caused by "[a]ny . . . earth movement including earth sinking, rising or shifting; caused by or resulting from human or animal forces or any act of nature." Contrary to Bibeau's arguments, this interpretation does not render the Perils Exception meaningless. *See Pelkey v. Gen. Elec. Cap. Assur. Co.*, 2002 ME 142, ¶ 15, 804 A.2d 385.

[¶20] Distilled to its simplest path and construing the policy as a whole, *see Me. Drilling & Blasting, Inc. v. Ins. Co. of N. Am.*, 665 A.2d 671, 675 (Me. 1995), the policy generally covers direct physical losses to Bibeau's home, but it explicitly does not cover any losses caused by earth movement, which includes natural disasters as well as "any other earth movement" such as sinking, rising or shifting "caused by or resulting from human or animal forces or any act of nature." Such losses are excluded even if they were caused concurrently by a covered peril. *See Boazova*, 968 N.E.2d at 393-94.

14

C. Conclusion

[¶21] Evaluating the plain language of the policy as a whole, we conclude that the court did not err in determining that the policy was unambiguous[10] and that Bibeau's losses were excluded from coverage pursuant to the earth movement exclusion.

The entry is:

Judgment affirmed.

---

[10] Bibeau urges us to apply the doctrine of reasonable expectations under which "insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1359 (N.D. Ga. 2003). Having concluded that the policy is unambiguous, however, Bibeau's reasonable expectations as the insured are not relevant to the analysis. *See Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 614 (Me. 1996) ("If the contract *is* ambiguous, it will be construed against the insurer so as to comply with the objectively reasonable expectations of the insured." (Emphasis added.)); *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 386-87 (Me. 1989).

Additionally, citing the doctrine of efficient proximate cause, Bibeau argues that even if his losses were partly caused by an excluded peril (earth movement), they were concurrently caused by a covered peril (the water leak) and therefore, his losses should be covered under the policy. Pursuant to that doctrine, "coverage exists if the predominant cause of the loss is a covered peril . . . or if a covered cause sets in motion a 'train of events' leading to the loss." *Stor/Gard, Inc. v. Strathmore Ins. Co.*, 717 F.3d 242, 245 (1st Cir. 2013) (quotation marks omitted); *Boazova v. Safety Ins. Co.*, 968 N.E. 2d 385, 394 n.4 (Mass. 2012). We decline to adopt the efficient proximate cause doctrine here because we are construing the terms of an unambiguous insurance policy. Moreover, even if we were to adopt this doctrine in construing ambiguous insurance policies, the policy's anti-concurrent-causation clause would unambiguously negate its application here.

Bruce W. Hepler, Esq. (orally), Law Offices of Bruce W. Hepler, Portland and Roger F. Brunelle, Jr., Esq., Law Offices of Roger Brunelle, Jr., Portland, for appellant Arthur Bibeau

Matthew T. Mehalic, Esq. (orally), and Nicole Sawyer, Esq., Norman Hanson & DeTroy, Portland, for appellee Concord General Mutual Insurance Company

Cumberland County Superior Court docket number CV-2018-464
FOR CLERK REFERENCE ONLY